# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**Kreamer Sports, Inc.,** *et al.*,

       **Plaintiffs,**

-V-                              **Case No.:  2:06-cv-576**
                                                **JUDGE SMITH**
                                                **Magistrate Judge King**

**Rocky Brands, Inc.,**

       **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Rocky Brands, Inc.'s Motion for Summary Judgment (Doc. 58) and Plaintiff Kreamer Sports, Inc. and David Kreamer's Motion for Summary Judgment on Defendant's Counterclaims against them (Doc. 60).  For the reasons that follow, the Court **GRANTS in part and DENIES in part** Defendant Rocky Brands, Inc.'s Motion for Summary Judgment and **DENIES** Plaintiff Kreamer Sports, Inc. and David Kreamer's Motion for Summary Judgment on Defendant's Counterclaims.

## I.    FACTS

Plaintiff, Kreamer Sports[1] was a Louisiana corporation specializing in the development of heated technology to be incorporated into clothing and footwear.  Defendant Rocky Brands is a Delaware corporation headquartered in Nelsonville, Ohio.  Rocky Brands is a designer, developer, manufacturer and marketer of footwear and related apparel focusing on, among other

---

[1] David and Janine Kreamer were also named Plaintiffs, however, they were dismissed because their claims arose out of their status as shareholders and they did not have any claims distinct from those of the corporation.  (*See* Doc. 31).

things, the outdoor/hunting industry.  Prior to 2003, Rocky Brands did not have any heated

products in its lines, but considered heated footwear and apparel products to be a potential area

into which Rocky Brands might expand.

During a February 2003 trade show, Kreamer Sports and its President and principal

shareholder, David Kreamer, discussed Kreamer Sports development of heated footwear and

apparel with Rocky Brands.  Kreamer Sports had been researching heated clothing even prior to

2003 under a Small Business Innovative Research ("SBIR") grant[2] from the federal government

and was producing several products for sale through its website and the outdoor retailer

Cabela's.  At this time, commercial sales of Kreamer Sports' products were generating a steady

stream of revenue for the company.  Additionally, prior to 2003, Kreamer Sports worked with

and made products for the Department of Defense, McDill Air Force Base, Natick Army Testing

Center, NASA, Experimental Navy Dive Team, Special Forces, General Dynamics, and the

Israeli military.

In March 2003, Plaintiff Kreamer Sports and Defendant Rocky Brands began working

together.  The parties entered into a one-page consulting agreement on March 6, 2003, titled a

Letter of Intent ("LOI").  Under this LOI, Kreamer Sports was to provide Rocky Brands with

their technological know-how in the area of heated products, in exchange for commissions on

Rocky's sales of any heated footwear and apparel products.  The LOI specifically provided, in

pertinent part:

> Kreamer Sports will provide Rocky Shoes & Boots, Inc. with the first right of
> refusal of the practical use of certain technologies, including, but not limited to,
> the heating of apparel and footwear.
>
> Kreamer has certain commercial item/s that it is sourcing and selling to Cabela's
> Inc. And Kraemer [sic] will turn over all orders for these items to Rocky.  All

_____

[2] At this time, only two other companies in the country had been awarded SBIR grants.

future business involving Kreamer technologies will be handled by Rocky as its
sole licensee.  Kraemer [sic] will be paid, on a quarterly basis, for the balance of
this year [2003], 15% of the net sales to Cabela's.  Rocky will pay Kreamer a
minimum of $40,000 this year; $20,000 will be paid upon consummation of this
letter of intent.

Rocky will pay Kreamer 6% , for the balance of this year, on all net shipments to
all other accounts on items that involved Kreamer technology.

For the following year's, the licensing fee percentage, on net shipments, will be as
follows, and the minimum dollar payments in each year are also noted:

| | | | |
|---|---|---|---|
| 2004 | 7% | Dollar Minimum | $100,000 |
| 2005 | 6% | | $200,000 |
| 2006 | 5% | | $300,000 |

Kreamer Sports and Rocky Brands operated under the terms of the LOI for nearly two
years.  The parties relationship, however, began to breakdown.  Rocky Brands reported that sale
of heated products were slow.  Kreamer Sports describes that the relationship became strained
due to Rocky's inadequate marketing of products incorporating Kreamer Sport's products
(marketed as "WarmGear"), unwillingness to perform quality control, and disappointing sales.

As a result of these problems, Rocky Brands began pressuring Kreamer Sports to enter
into a new agreement that would spread Rocky's guaranteed payments to Kreamer Sports over a
longer period of time.  Rocky withheld its monthly payment obligation to Kreamer Sports under
the LOI for the months of January, February, March, and April 2005, until a new agreement was
signed.  (Kreamer Depo. Ex. 3).  On or about April 25, 2005, the parties renegotiated their
agreement and signed a new agreement, effective January 1, 2005 ("Consulting Agreement").
Upon receipt of the signed Consulting Agreement, Rocky Brands forwarded payments for
materials previously ordered from Kreamer Sports, as well as the payments for January,
February, March, April, and May 2005.

3

Some relevant provisions of the Consulting Agreement, specifically provide:

C.     Rocky desires to obtain rights to the Existing Kreamer Technology and to employ Consultant to assist Rocky in additional research and development of heated apparel and footwear. . ..

1.     **Definitions.**

* * *

d.     "Existing Kreamer Technology" means Heating Technology developed and owned as of this date by Consultant

* * *

7.     **Warranty.**   Consultant warrants and represents that Consultant is the owner of all rights in and to the Existing Kreamer Technology and that no third party has any right or interest therein.

* * *

9.     **Ownership.**   All Heating Technology and information (including the Existing Kreamer Technology and the New Heating Technology) inventions, improvements, and other results of Consultant's services performed hereunder to the extent used and incorporated by Rocky in its Heated Products, are the exclusive property of Rocky and may be protected by Rocky as Rocky deems appropriate.

* * *

13.     **Term and Termination.**   The term of this Agreement shall commence on the date set forth above and shall continue for a period of five years, unless sooner terminated as provided below.

(a)     Either party may terminate this Agreement effective immediately if the other party is in default of its obligations hereunder and such default remains uncured for a period of 15 business days following the giving of notice of default by the non-defaulting party; and

* * *

(Am. Compl. Ex. 3, hereinafter "Consulting Agreement").

On June 22, 2005, the parties met to discuss the development of products for the 2006 season. Rocky Brands provided Kreamer Sports with a list of several heated technology deliverables in this meeting. Several items on Rocky's checklist required Rocky to provide

4

Kreamer Sports with products and materials before Kreamer Sports could perform the work and testing required.  Kreamer Sports was delayed in performing this work due to Rocky's delay in sending the necessary materials.  Even with the delay, Kreamer Sports was able to meet the deadline for the 2006 season and provided Rocky all the requested information and products.

From March 2003 to June 2005, employees of Rocky Brands repeatedly contacted Kreamer Sports regarding the development of the butane-heated vest and were assured that it was in development and Rocky alleges that Mr. Kreamer made representations that Kreamer Sports owned the technology and proprietary rights to the butane heated vest.  But then, in June 2005, Kreamer Sports admitted that a third party (Panasonic, sometimes referred to by its brand name, "National") had the intellectual property rights to a butane-heated vest that Kreamer had shown Rocky before the parties entered into the LOI.

In August 2005, Rocky Brands states that Kreamer Sports failed to comply with certain of Rocky's requirements regarding product development under the Consulting Agreement. (Recchi Decl. ¶¶6-10, 13-15, 17-18).  On September 8, 2005, Mark Recchi with Rocky Brands sent an email to David Kreamer at Kreamer Sports alleging that the work provided was too late for the 2006 season deadline.  Then, in a letter dated October 11, 2005 (the "Termination Letter"), David Sharp, President and COO of Rocky Brands, informed Kreamer Sports that Rocky Brands was terminating the Consulting Agreement.  In the letter, Mr. Sharp stated that Kreamer Sports was in default of the Consulting Agreement by failing to use its best efforts to assist Rocky Brands in the development of technology for heated products.  Further, that Kreamer Sports had failed to provide prototypes of heated products in time for the 2006 season deadline.  Finally, that Kreamer Sports had breached the warranty provision in the Consulting

Agreement because it did not own the proprietary rights to a butane-heated vest being developed at the time.

On July 10, 2006, Plaintiff Kreamer Sports initiated this case asserting claims of breach of contract, promissory estoppel, unjust enrichment, fraud, violation of the Ohio Uniform Trade Secrets Act, and accounting.  Kreamer Sports claims that the termination of the Consulting Agreement forced the sale of the assets of its business, that it lost out on millions of dollars of military contracts, and also seeks punitive damages.  On September 11, 2006, Defendant Rocky Brands answered and also filed a counterclaim for breach of contract against Kreamer Sports and fraud against Kreamer Sports and David Kreamer.

## II.    SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that partys case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[3]  The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.*  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.*  It is

---

[3] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).


### III.   DISCUSSION

Plaintiff Kreamer Sports asserts six claims against Defendant Rocky Brands: breach of contract, promissory estoppel, unjust enrichment, fraud, violation of Ohio's Uniform Trade Secrets Act, and accounting. Defendant Rocky Brands asserts counterclaims against Kreamer Sports for breach of contract and fraud and also a counterclaim against David Kreamer in his personal capacity for fraud.

As a preliminary matter, the parties agree that Ohio law governs this diversity action. (*See* Consulting Agreement ¶ 15). The parties further agree to the jurisdiction of this Court. (*Id.* at ¶ 16).

### A.   Breach of Contract

Defendant Rocky Brands contends that it is entitled to summary judgment on Plaintiff's breach of contract claims, while Plaintiff Kreamer Sports counters that it is entitled to summary judgment on Defendant's breach of contract counterclaim. The parties entered into two separate contracts: (1) 2003 Letter of Intent; and (2) the Consulting Agreement. Plaintiff asserts a breach of contract claim with respect to each contract. The Court will address each in turn.

### 1.    *2003 Letter of Intent*

Defendant Rocky Brands argues that it is entitled to summary judgment on Plaintiff's breach of contract claim relating to the LOI because Plaintiff Kreamer Sports cannot show any breach of the terms of the agreement.  To prevail on a breach of contract claim, a plaintiff must show:  "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff."  *EFA Assocs. v. Dept. of Admin. Servs.*, 2002 Ohio App. LEXIS 2438 (Ohio Ct. App. (10th Dist.) May 21, 2002) (*citing Allied Erecting & Dismantling Co. v. Uneco Realty Co.*, 146 Ohio App. 3d 136, 142 (Ohio Ct. App. (7th Dist.) 2001).  "A valid and binding contract comes into existence when an offer is accepted." *Mécanique C.N.C., Inc. v. Durr Environmental, Inc.*, 304 F. Supp. 2d 971, 979 (S.D. Ohio 2004). Under Ohio law, "both parties must have a clear understanding of the terms of an agreement and an intention to be bound by its terms before an enforceable contract is created."  *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.*, 541 F.2d 584, 587 (6th Cir. 1976);  *see also Scotts Co. v. Central Garden & Pet Co.*, 403 F.3d 781, 788 (6th Cir. 2005) ("An enforceable contract in Ohio arises from a meeting of the minds, and must be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term).

There is no dispute between the parties that the 2003 Letter of Intent constitutes a contractual agreement.  Under the terms of the LOI, Kreamer Sports would receive a minimum of $40,000 in 2003, and if the applicable percentage of sales totaled more than that amount, Kreamer Sports would be due 15% of net sales from Cabela's orders and 8% of net sales for all other orders.[4]  In 2004, Kreamer Sports was to receive the greater of 7% of net sales or

---

[4] The Cabela's sales were treated differently because Kreamer had existing orders from Cabela's at the time that the parties negotiated the LOI.

$100,000, regardless of the purchaser.  The LOI further provided to Rocky Brands "the first right of refusal of the practical use of certain technologies, including, but not limited to, the heating of apparel and footwear."

At the time the LOI was executed, orders for Cabela's were generating approximately $46,000 in sales, which were entirely turned over to Rocky.  The orders from Cabela's and other vendors included two styles of a heated vest, a heat controller, and three types of battery packs. While operating under the LOI, Kreamer Sports met with Rocky Brands and offered approximately twenty heated products for further development and use by Rocky Brands, in addition to those already for sale.  (Kreamer Depo. at 9:17-20).

It is undisputed that Rocky Brands paid Kreamer Sports $40,000 in 2003 and $100,000 in 2004.  Rocky Brands asserts that it had no further obligation under the LOI.  Rocky's interpretation of the LOI was that it was only to pay the applicable percentage of the net sales if the that amount exceeded the guaranteed minimum amount.  Essentially, Rocky's interpretation of the contract is that Kreamer Sports is owed the greater of the applicable percentage of net sales or the minimum payments.  Rocky argues that applicable percentage of net sales from both Cabela's and other manufacturers in 2003 and 2004 never exceeded the guaranteed minimums, and therefore nothing else is owed to Kreamer.  For example, net sales of heated products in 2004 totaled less than $500,000.  Seven percent of those net sales is far below the guaranteed minimum amount.  In fact, net sales in 2004 had to have exceeded $1.42 million for Kreamer Sports to have received more than the minimum guaranteed payment.

Kreamer Sports argues that this interpretation is not clearly reflected in the LOI and was not the parties' understanding of the terms at the time the LOI was written.  Kreamer further

asserts that it does not seek to insert provisions into the LOI, but only to enforce the true terms of the contract as they were understood when the LOI was drafted and signed.

Contract interpretation is a matter of law, and in determining whether a contract is ambiguous, the court's inquiry is confined to the contract itself.  *See Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270 (Ohio 1999); *Crowther v. Holtkamp*, 1994 Ohio App. LEXIS 2082, *13 (Ohio App. May 12, 1994).  Rocky Brands refers the Court to the applicable caselaw, which provides where the contract language is clear and unambiguous, then "the court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties." *DiGioia Bros. Excavating, Inc. v. Cleveland Dept. Of Pub. Util. Div. of Water*, 135 Ohio App. 3d 436, 446 (Ohio Ct. App. 8th Dist. 1999)*; see also Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St. 2d 241 (1978); *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.,* 15 Ohio St.3d 321 (1984).  On the other hand, Kreamer Sports argues that the contract is ambiguous, and therefore the interpretation of the contract requires both factual and legal questions.  *Thomas v. American Elec. Power Co., Inc.*, 2005 Ohio 1958 (Ohio App. 10th Dist. 2005), *(citing Watkins v. Williams*, 2004 Ohio 7171 (Ohio App. 9th Dist. 2004)).

Though Plaintiff Kreamer Sports is correct in that the LOI does not specifically state that Rocky Brands will pay the greater of the licensing fee percentage or the dollar minimum, the LOI does provide for both.  The term "minimum" seems to further Rocky's argument.  However, construing the facts in favor of Plaintiff, the Court does find that the LOI is ambiguous as to the material fact in dispute.  Therefore, summary judgment on Plaintiff Kreamer Sports' breach of contract claim is not appropriate at this time.

Rocky Brands also argues that Mr. Kreamer admitted in his Rule 30(b)(6) deposition that Kreamer Sports had no claims under the LOI, (Kreamer Depo. Vo. 2 at 10-14); and the next day

changed his testimony and said that he thought that Kreamer was entitled to the minimum amount in addition to a percentage of sales.  While the Court is aware of the relevant caselaw that such an effort to recant prior testimony does not create a genuine issue of material fact *(see Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991), the Court does not find it necessary to consider Mr. Kreamer's testimony as the Court has already concluded that the LOI is ambiguous on its face.

Considering the Court has found the LOI to be ambiguous as to whether the minimum payments are separate from the percentages of net sales to vendors, or whether the only payment owed Kreamer Sports is the greater of the two figures, parol evidence would be admissible to ascertain the parties' intent.  *See Illinois Controls v. Langham,* 70 Ohio St. 3d 512, 521 (1994); *Merchants Nat. Bank v. Cole*, 83 Ohio St. 50 (1910); *Hildebrand v. Fogle*, 20 Ohio 147 (1851) (it is well established that where contract terms are ambiguous, parol evidence is admissible to resolve the ambiguity and ascertain the intention of the parties).  "In Ohio, parol evidence directed to the nature of a contractual relationship is admissible where the contract is ambiguous and the evidence is consistent with the written agreement which forms the basis of the action between the parties." *Illinois Controls*, 70 Ohio St. 3d at 520.  Therefore, in order to resolve the ambiguity of the LOI and to properly consider parol evidence, the Court must deny summary judgment.

### 2.  *Consulting Agreement*

Plaintiff Kreamer Sports also asserts a breach of contract claim relating to the 2005 Consulting Agreement.  Rocky Brands again seeks summary judgment on this claim.  The parties agree that the 2005 Consulting Agreement constitutes a binding contractual agreement. The second element of a breach of contract claim is performance by the Plaintiff.  Defendant,

Rocky Brands, argues that Plaintiff cannot satisfy this element because Plaintiff Kreamer Sports has failed to perform in accordance with the Consulting Agreement with respect to the warranty provision and in providing Rocky Brands requested information.

> a.    **Warranty provision**

Defendant Rocky asserts that Plaintiff breached the Consulting Agreement because it warranted that no third party owned the rights to any of Kreamer's existing technologies.  The warranty provision specifically states: "Consultant warrants and represents that Consultant is the owner of all rights in and to the Existing Kreamer Technology and that no third party has any right or interest herein."  (Consulting Agreement ¶7).  Rocky Brands alleges that Kreamer had been developing the butane-heated vest for Rocky ever since David Kreamer showed Rocky a prototype in 2003.  Since 2003, Rocky employees asked about the butane vest on several occasions and were told that the vest was "in development."  (*See* Pl.'s Am. Responses to Def.'s Admissions at 14).  Specifically, in the admission, Kreamer stated,

> At the time David Kreamer made these explanations, he disclosed to Rocky the following: 1.) That there was further research and development required in the development of butane-heated vests that Rocky could eventually sell; 2.) that there was a working prototype of a butane-heated vest which required more research and development and intellectual property due diligence to investigate for existing patented heating technology before roll-out of the butane-heated vest could commence; and, 3.) based on the foregoing, that the butane-heated vests were not ready for market yet.

(*Id*. at 13-14).

In June 2005, Rocky Brands learned that Kreamer did not have intellectual property rights to the butane-heated vest, as those rights were owned by Panasonic.  Kreamer informed Rocky that Rocky would have to pay $100,000 to Panasonic to purchase the patent.  Rocky Brands alleges that the fact that a third party had rights to the technology that Kreamer was marketing to Rocky is a violation of the Consulting Agreement.

13

Kreamer Sports argues that the plain language reading of the Consulting Agreement supports its argument that it did not breach the warranty provision.  Kreamer Sports specifically references the definition of "Existing Kreamer Technology," which is defined as "Heating technology developed and owned as of this date by Consultant."  (Consulting Agreement § 1(d)).  The Court agrees with Plaintiff Kreamer Sports that a plain reading of the contract proves that Kreamer did not breach the warranty provision.  Both parties agree that the butane-heated vest was under development for the duration of the parties' relationship, and there is no question that it was understood by Rocky to be a product currently under development at the time the Consulting Agreement was signed.  (*See* Maser Depo. 18:10-13, 18:21).

Products still in the development stage were contemplated in Section 11 of the Consulting Agreement which states:

> All designs for Heated Products ("Heated Product Designs") developed by Consultant during the term of this Agreement must be submitted to Rocky for review and shall be Rocky's exclusive property.  The term Heated Product Designs means any inventions, improvements, designs, plans, discoveries or innovations of a technical or business nature, whether patentable or not, relating to Heated Products if the Heated Product Designs are conceived of or reduced to practice by Consultant during the term of this Agreement.

Plaintiff Kreamer Sports argues, and the Court agrees, that the butane-heated vest is a "Heated Product Design" because it was not completed at the time the Consulting Agreement was signed.  Further, in signing the agreement which includes the language, "whether patentable or not," the parties contemplated that research and development could lead to the production of non-patentable products.  Therefore, the Court finds that Plaintiff Kreamer Sports did not breach the Consulting Agreement warranty provision as alleged by Defendant Rocky Brands.  Having concluded that Plaintiff has performed in accordance with the contract with respect to the warranty provision, the Court must still consider Rocky's second allegation against Kreamer of

14

failure to perform under the Consulting Agreement before addressing the remaining elements of a breach of contract.

<blockquote><b>b.      Failure to provide information, products, documents, and designs</b></blockquote>

Rocky Brands also alleges that Plaintiff Kreamer Sports breached the Consulting Agreement by repeatedly failing to provide Rocky with information, products, documents, and designs that Rocky requested. Rocky alleges that it had not received any new products from Kreamer Sports at the beginning of 2005 and that sales of heated products from 2004 were very low. In early 2005, Rocky began requesting smaller rechargeable batteries for the next line of products. In June 2005, the parties met and Mr. Kreamer was given a list of deliverables to provide Rocky Brands.

Kreamer Sports responds that the sales of the heated products, while disappointing, were not its responsibility under either the LOI or the Consulting Agreement. Kreamer further asserts that there are endless reasons why the sales were slow, but most of the variables were under Rocky's control. Rocky made final decisions on which heated products to manufacture, which vendors to solicit, pricing of all products, raw materials, specifications, and manufacturers. Kreamer Sports summarizes that it "used its best efforts to provide Rocky with cutting edge heated technology and performed the research and development requested of them; the fact that sales were poor, while lamentable for both parties, is not Kreamer Sports' responsibility and does not constitute a breach of its obligations under the Agreement." (Pl.'s Memo. in Opp. at 17).

Plaintiff Kreamer Sports also argues that it provided all the deliverables requested during the June 2005 meeting, including the run time test results of rechargeable batteries. Kreamer asserts that the proof that these items were produced is in the prototypes Mr. Kreamer produced

during this depositions.  Specifically, over the course of ten months operating under the Consulting Agreement, Kreamer Sports developed and provided to Rocky a third style of heated glove, a polymer heating element, a heated mitten, a heated booty, a heated boot, and a heated scarf.

Defendant Rocky Brands argues in response that while the dispute over whether Kreamer Sports performed may at first glance appear to create an issue of fact, there is undisputed proof that Kreamer never provided all of the deliverables requested in June 2005.  Specifically, Defendant argues that Plaintiff's reliance on Mr. Kreamer's affidavit in support of its argument that it produced all of the deliverables is not proper because Mr. Kreamer's affidavit contradicts his Rule 30(b)(6) deposition testimony.  "It is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition." *Jones*, 939 F.2d at 385.  Irrespective of Rocky's argument concerning the conflicting testimony, the Court finds there is a genuine issue of material fact regarding whether Kreamer Sports complied with the terms of the Consulting Agreement.

Considering the Court has concluded there is a genuine issue of material fact as to whether Plaintiff Kreamer Sports complied with the Consulting Agreement, summary judgment on Plaintiff's breach of contract claim is not appropriate.  The Court need not address the remaining elements of a breach of contract claim.

### 3. *Defendant Rocky Brands' Breach of Contract Counterclaim*

Defendant Rocky Brands asserts a counterclaim for breach of contract by Plaintiff Kreamer Sports, which is based on the same arguments asserted by Defendant above regarding the first element of a breach of contract claim, Plaintiff's performance under the Consulting

16

Agreement.  Analyzing Rocky's Brands breach of contract claim based on the same elements set forth above, the first element, existence of a contract is not in dispute.  Second, Rocky must establish performance by counterclaim plaintiff, itself.  Third, Rocky must establish breach by counterclaim defendant Kreamer Sports.  Finally, Rocky must set forth damages it has suffered as a result of Kreamer's alleged breach of the Consulting Agreement.

The Court has already concluded that Kreamer Sports did not breach the Consulting Agreement with respect to the warranty provision.  The Court has also concluded that there is a genuine issue of material facts as to whether Kreamer Sports complied with the other terms of the Consulting Agreement, which included the obligation to provide information, products, documents, and designs upon Rocky's request.  For the same reasons discussed above, Rocky Brands' breach of contract counterclaim must be denied.

**B.      Fraud**

Defendant Rocky Brands argues that it is entitled to summary judgment on Plaintiff's claim of fraud.  Plaintiff Kreamer Sports and Mr. Kreamer also argue that they are entitled to summary judgment on Rocky Brand's claim of fraud against them.

**1.      Plaintiff's Fraud Claim against Rocky Brands**

In Count Four, Plaintiff Kreamer Sports alleges that:

The Defendant's representatives drafted and signed the Letter of Intent and the Consultation Agreement promising to perform certain future acts with the then present intent not to perform.

Defendant failed to perform its obligation and Plaintiff Kreamer Sports, Inc. and its shareholders have suffered damages as a result of Defendant's fraudulent representations.

(Am. Compl. ¶¶ 34-35).

17

Defendant Rocky Brands argues that it is entitled to summary judgment on Plaintiff's fraud claim because Rocky has not made any factual misrepresentations in its dealings with Kreamer Sports.  In Ohio, the elements of fraud are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."  *Groob v. Keybank*, 108 Ohio St. 3d 348, 357 (2006) (*quoting Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 55 (1987)).  Further, "[a] tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron Financial Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (Ohio Ct. App. 9th Dist. 1996).

In *Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005 Ohio App. LEXIS 4475 (Ohio Ct. App. 9th Dist. 2005), the plaintiff alleged that the defendant made misrepresentations that it would fulfill its promises as the basis for its fraud claim, but also alleged that the defendant's failure to fulfill those promises was a breach of contract.  The court held that these were essentially the same conduct and a separate fraud claim could not be maintained.  *Id.*  "To hold otherwise would be to convert every unfilled contractual promise, i.e., every alleged breach of contract, into a tort claim."  *Id.* at **42.

18

In response to Rocky's interrogatory requesting the basis of Kreamer Sports' fraud claim, Kreamer identified the following activities it claims constitutes fraudulent conduct by Rocky Brands:

1.  Rocky did not pay minimum amounts due under the LOI.
2.  Rocky did not pay percentages of sales to Cabela's in 2003
3.  Rocky "attempted to negotiate with Kreamer Sports to reduce the total amount owed [under the LOI] to $200,000"
4.  "Rocky delayed the release of the heated glove that Kreamer Sports developed for them for the 2004 and 2005 lines"
5.  Rocky failed to "adequately market heated gear, resulting in lowered sales of these products and thus, earned fewer revenues for Kreamer Sports"
6.  Rocky stopped payments to Kreamer "to pressure Kreamer Sports into accepting the Consulting Agreement"
7.  Rocky did not use Kreamer Sports personnel for quality control with their overseas manufacturers
8.  Rocky failed to follow up with vendors that Kreamer Sports gave to them about heated gear

(Def.'s Mot. for Summ. J. at 23, quoting in part Pl.'s Resp. To Def.'s Interrog. No. 16).  Rocky Brands does not concede that any of the aforementioned allegations are true, however, it asserts that even if they are all considered to be true for purposes of this Motion, not a single action described can be characterized as a factual misrepresentation.  The Court agrees.

Kreamer Sports' allegations against Rocky Brands may constitute poor behavior or a breach of a promise, but no where does Kreamer allege any misrepresentation by Rocky Brands. Notably, items 3, 4, 5, 7, and 8 are the same allegations that Kreamer has asserted in support of its breach of contract claims.  The Court therefore finds that Kreamer Sports has failed to allege or prove any factual misrepresentation by Rocky Brands to maintain a claim of fraud. Defendant, Rocky Brands, is entitled to summary judgment on Plaintiff's fraud claim.

### 2.     Defendant's Fraud Counterclaim against Kreamer Sports and David Kreamer

Plaintiff Kreamer Sports and counterclaim Defendant David Kreamer[5] argue that they are entitled to summary judgment on Defendant Rocky Brands' counterclaim for fraud against them. Kreamer Sports and Mr. Kreamer argue that Rocky Brands has failed to put forth any evidence to support any of the elements of its fraud claim.  The Court will address the elements of fraud in turn.

### a.     A representation or concealment of a fact

Rocky Brands asserts that the Kreamers represented to them that they owned the butane-heated vest.  Rocky's President and COO David Sharp testified that David Kreamer repeatedly told Rocky that Kreamer Sports owned the rights to the butane-heated vest.  (Sharp Depo. at 15, 54; Sharp Decl. ¶¶ 6-7).  Further, as was previously argued, employees of Rocky Brands contacted Kreamer Sports on several occasions between March 2003 and June 2005 to inquire about the status of the butane-heated vest and Mr. Kreamer responded that the vest was "in development."  (*See* Pl.'s Am. Responses to Def.'s Admissions at 14).

Rocky Brands argues that even if the Court finds that there were no affirmative representations, the Kreamers made material omissions about the vest.  Rocky alleges that the Kreamers never revealed that a third party owned the intellectual property rights to the butane-heated vest during negotiations for the LOI or the Consulting Agreement.  It was not until a meeting in June 2005 – six months after the effective date of the Consulting Agreement – that

---

[5] The Court previously held that regardless of whether the corporate veil can be pierced, Mr. Kreamer, as an employee, can be held personally "liable for actions taken in the course and scope of his employment." (Doc. 31).  Therefore, while some of the alleged statements were made by Mr. Kreamer on behalf of Kreamer Sports, Mr. Kreamer was acting as an agent of the principal, Kreamer Sports.  Therefore, Mr. Kreamer can potentially be held personally liable if the statements he made are ultimately considered fraudulent.

the Kreamers told Rocky that Panasonic owned the intellectual property rights to the butane-heated vest.  (Maser Depo. at 50-51).  Rocky asserts that at the very least, there is a question of fact as to the representations and omissions that the Kreamers made to Rocky.

Kreamer Sports concedes that David Kreamer, in his capacity as president of Kreamer Sports, presented a butane-heated vest as a concept and product under development.  The Kreamers, however, argue that Rocky cannot prove any of the remaining elements of fraud.  The Court, however, construing the facts in favor of Rocky Brands, finds that there is at least a question of fact as to whether the presenting of the butane-heated vest was a material misrepresentation or omission.

### b.    Material to the transaction at hand

Rocky Brands asserts that the butane-heated vest was an integral part of Rocky's decision to do business with the Kreamers.  (Maser Expert Report; Sharp Depo. at 15).  The Kreamers argue in opposition that because the vest is not mentioned specifically in the parties' agreements, and there are no sales projections about the vest, that there is no evidence that the butane-heated vest was a material portion of the parties' dealings.

The materiality of a representation to the subject transaction is defined as a fact that "would be likely, under the circumstance, to affect the conduct of a reasonable person with reference to the transaction in question."  *Van Camp v. Bradford*, 63 Ohio Misc.2d 245 (Butler Co. 1993).  The materiality of a representation if considered a question of law if reasonable minds could not differ on the question.  *Long v. Insurance Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982).

While the Court recognizes that there were many products and products in development shown to Rocky Brands during the first meeting, none of the specific products are mentioned in

21

the agreements between the parties.  Regardless of how many products were presented by Kreamer Sports, representatives from Rocky Brands, Mr. Maser, Mr. Sharp and even Charles Cronn, formerly of Kreamer Sports, have testified that the butane-heated vest was material to the relationship between the parties.  Mr. Maser testified that "[t]he butane vest was an integral part of our beginning a relationship with Kreamer.  This was the 1 item Kreamer had that was really leading edge."  Maser further stated that he asked about the progress of the vest at every meeting he had with the Kreamers.  (Maser Depo. at 51, 54; Maser Export Report).  Mr. Sharp testified that "there was quite a bit of discussion [about the butane-heated vest] because we liked that, we thought it was quite commercial, and David Kreamer said that he owned the rights to the vest." (Sharp Depo. at 15).  Charles Cronn testified that Rocky "was excited about it [and Kreamer Sports] knew that Rocky was interested in it [the butane-heated vest].  (Cronn Depo. at 149-50). Again, the Court finds that, not only is there is a question of fact regarding the alleged misrepresentation or omission, but whether the alleged misrepresentation or omission was material.  Having found there is a genuine issue of material fact with respect to the first two elements of fraud and that Rocky Brands has sufficient alleged the remaining elements of fraud, the Court finds that summary judgment is not appropriate.  The Kreamers' motion for summary judgment with respect to the fraud claim against them is therefore denied.


**C.	Plaintiff's Promissory Estoppel and Unjust Enrichment Claims (Counts 2 and 3)**

Defendant argues that Plaintiff has conceded its promissory estoppel and unjust enrichment claims because it has admitted to the contractual relationship with Rocky Brands. Plaintiff counters by asserting that these "quasi-contractual claims will be considered in the event the parties are not found to have a contractual relationship."  (Kreamer Memo. in Opp. at

27).  Plaintiff asserts that these claims should remain pending as alternative theories.  The Court, however, finds that it is undisputed that the parties have a contractual relationship under both the 2003 LOI and the 2005 Consulting Agreement.  Plaintiff has admitted to the contractual relationships and therefore cannot bring the unjust enrichment and promissory estoppel claims.  *See O.E. Meyer Co. v. BOC Group, Inc.*, 2000 Ohio App. LEXIS 734, at *15 (Ohio Ct. App. Mar. 3, 2000); *Loop v. Hall*, 2006 Ohio App. LEXIS 4275 (Ohio Ct. App. August 8, 2006).

**D.      Plaintiff's Ohio Uniform Trade Secret Act and Accounting Claims (Counts 5 and 6)**

Defendant Rocky Brands moves for summary judgment on Plaintiff's Ohio Uniform Trade Secret Act and Accounting claims.  Plaintiff, however, has failed to respond to Defendant's arguments on these claims.  Once a party moves for summary judgment, the nonmoving party must come forward with specific facts showing the existence of a material issue of fact.  *Muncie Power Products, Inc. v. United Technologies Automotive*, 328 F.3d 870, 873 (6th Cir. 2003).  Plaintiff has not even mentioned these claims in its briefing, therefore, the Court will assume these claims have been abandoned.  Defendant Rocky Brands is therefore entitled to summary judgment on Plaintiff's Ohio Uniform Trade Secret Act and Accounting claims.

## V.    CONCLUSION

For the reasons stated above, Defendant Rocky Brands' Motion for Summary Judgment is **GRANTED in part and DENIED in part**.  Summary Judgment shall be entered in favor of Defendant on Plaintiff's fraud claim, promissory estoppel claim, unjust enrichment claim, Ohio Uniform Trade Secret Act claim, and accounting claim.  Plaintiff's breach of contract claims on the LOI and the Consulting Agreement remain pending.  Plaintiff Kreamer Sports' Motion for Summary Judgment on Defendant's counterclaims is **DENIED**.  Rocky Brands' counterclaims against Kreamer Sports for breach of contract and Kreamer Sports and Mr. Kreamer for fraud remain pending.

The Clerk shall remove Documents 58 and 60 from the Court's pending motions list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**